UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY L. RIPLEY,

    Plaintiff,

v.                                                                     Case No. 1:13-cv-1278
                                                                    Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                       /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on August 29, 1962 (AR 157).[1] He alleged a disability onset date of August 20, 2005 (AR 157). Plaintiff graduated from high school and had previous employment in construction and as a factory line worker (AR 163). Plaintiff had three previous claims for DIB, which the ALJ addressed as follows:

> The claimant's first claim was allowed and he had a period of disability from March 1996 to July 1997. On April 3, 2000, the claimant filed another application for Disability Insurance Benefits. On August 14, 2001, an unfavorable decision was rendered at the hearing level. On March 10, 2003, the claimant filed his most recent prior application for Disability Insurance Benefits. On August 19, 2005, an unfavorable decision was rendered at the hearing level. This became the final decision of the Commissioner, as the claimant's appeal was denied.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

> The undersigned finds that the issue of disability from August 15,2001 to August 19,2005, the date of the prior final decision has been addressed and the doctrine of *res judicata* applies to the issue of disability from August 15, 2001 through August 19, 2005. The undersigned will address the issue of disability beginning on August 20, 2005, the day after the prior Administrative Law Judge decision.

(AR 13).

Plaintiff filed his present claim for DIB on October 16, 2006 (AR 13). He identified his disabling conditions as: herniated discs L3-L4 with screws and bands; multiple injuries to right hip; top to lower spine condition; compound fracture in left fibula and tibia; carpal tunnel syndrome; and high blood pressure (AR 162). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on May 27, 2009 (AR 13-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court

2

does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005 (AR 15). The ALJ also found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 20, 2005 through his last insured date of December 31, 2005 (AR 15). At the second step, the ALJ found that through the last date insured, plaintiff had the following severe impairments: herniated disc; degenerative disc disease; status post fractured pelvis; status post lumbar laminectomy; and cervical disc disease (AR 16). At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). Specifically, plaintiff did not meet the requirements of Listing 1.04 (disorders of the spine) (AR 16).

The ALJ decided at the fourth step that "through the date last insured, the claimant

had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a sit/stand option" (AR 16). The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work (AR 18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light work in the national economy (AR 18). The ALJ relied on testimony from plaintiff's previous hearing held in 2005:

> The claimant and his representative have previously appeared before another Administrative Law Judge on May 12, 2005 regarding the claimant's allegations. After that hearing, Administrative Law Judge Thomas English made a final unfavorable decision on August 19, 2005. During the current hearing, as discussed above, the only new alleged limitations since that August 19, 2005 determination were neck pain and wrist pain. However, the claimant did not have surgery on his neck. This evidences little to no change in the claimant's condition since the prior unfavorable decision of Administrative Law Judge Thomas English. The undersigned finds Judge English's decision persuasive regarding the claimant's ability to perform other jobs in the national economy. During the hearing held by Judge English, a vocational expert testified that the claimant could perform the following unskilled, light jobs [in the Lower Peninsula of the State of Michigan]: press operator (1,500 positions); inspector (3,000 positions); and machine operator (5,000 positions) (Ex. D3A/17) [AR 73]. Because the undersigned finds little to no change in the claimant's condition since the August 19, 2005 final decision by Judge English; the findings based on the testimony of the vocational expert during the hearing held by Judge English are adopted.

(AR 19). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from August 20, 2005 (the alleged onset date) through December 31, 2005 (the date last insured) (AR 19-20).

### III. ANALYSIS

Plaintiff raised four issues on appeal:

**A.  The ALJ concluded that the short period of time between August 20, 2005, the date of the last adverse decision and the date of last insured, December 31, 2005, contained minimal documentation**

5

**of objective medical evidence which was error. The ALJ did not
consider Plaintiff's serious medical impairments in combination
as required by regulation and case law in denying liability.**

The ALJ noted that "the record does contain minimal documentation within the relevant time period showing cervical degenerative disc disease and carpal tunnel syndrome on the right" (AR 17). Plaintiff contends that the ALJ erred by concluding that there was minimal documentation of objective medical evidence during the relevant time period of August 20, 2005 and December 31, 2005 and by failing to find new medical impairments or a worsening of plaintiff's earlier medical impairments based on this evidence. Plaintiff's contention is without merit.

After noting that there was some new evidence, the ALJ provided an extensive review of that evidence:

> On October 18, 2005, the claimant underwent an electrodiagnostic evaluation for numbness and tingling in the right hand and fingers (Ex. DI2F/8-9). On physical examination Gary Branch, D.O. at Mid Michigan Orthopedics noted no evidence of visible muscle atrophy or side to side asymmetry of the bilateral upper extremities. Range of motion of the bilateral upper extremities was within normal limits at the shoulder, elbow, wrist, and hand. Cervical spine range of motion was within functional limits. Manual muscle testing of the bilateral upper extremities revealed grade 5/5 strength for deltoid, biceps, left triceps, wrist extensors, and intrinsic hand muscles. Right triceps was graded at 4+/5 with a subtle, but perceptible sense of weakness as compared to the left. Sensory exam revealed no evidence of focal or objective sensory deficit. Muscle strength reflexes were graded at 2/4 for bilateral biceps, triceps, and brachioradialis. Hoffman's sign was negative in the bilateral upper extremities and Spurling's maneuver was negative for arm or hand paresthesias. Dr. Branch also performed an electromyogram (EMG) on the claimant. Dr. Branch concluded that there were some electrodiagnostic abnormalities in the claimant's right upper extremity, which was potentially consistent with two problems: (1) the claimant appeared to have a moderate severity right median neuropathy at the wrist (carpal tunnel syndrome) without significant axon loss; and (2) some evidence for more proximal nerve injury with abnormal spontaneous activity in the pronator teres muscle. This could be due to C6C7 cervical radiculopathy, plexopathy, or less likely a proximal median neuropathy near the elbow. Cervical radiculopathy would seem to be the most likely possibility based on the findings. Also, most of the symptoms were confined to the claimant's hand;

> although he did have more proximal radiation at time and there appeared to be mild weakness of the right triceps as compared to the left. Dr. Branch recommended a further workup of the cervical spine with an MRI and discussed conservative and operative treatment options for carpal tunnel syndrome.
>
> On October 27, 2005, an MRI of the cervical spine showed multilevel degenerative disc changes, most pronounced at C3-4 on the right and C6-7 on the left through no gross central canal stenosis was seen. Additionally, there was mild right neural foraminal narrowing at the C3-4 level and mild left neural foraminal narrowing at the C6-7 level (Exs. D2F/24-25; D12F/10-11).
>
> Although the claimant was diagnosed with carpal tunnel syndrome during the relevant time period; shortly after the date last insured (on March 30, 2006), the claimant underwent endoscopic carpal tunnel release on the right hand and wrist (Ex. D1F/5-6). The records do not reveal any lasting limitations related to the claimant's carpal tunnel syndrome.
>
> Additionally, although the MRI evidence shows cervical disc disease, the treatment the claimant received was routine. In fact, at the hearing, the claimant testified, that even though he had neck pain, he did not have surgery. Notably, the medical records that post-date the date last insured in this case, contain very few notations related to neck pain.

(AR 17).

In his first claim, plaintiff contends that the ALJ erroneously referred to "minimal documentation" regarding his medical condition during the relevant time period of August 20, 2005 through December 31, 2005. Despite the ALJ's use of this terminology, the record reflects that the ALJ considered the evidence of plaintiff's condition during the relevant time period. The ALJ also considered the endoscopic carpal tunnel release on plaintiff's right hand and wrist which occurred three months after the relevant time period. The Court finds no error in the ALJ's review of these records.

In addition, plaintiff contends that the ALJ's review of those records did not consider the combined effects of his impairments. The Social Security Act requires the agency "to consider

the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988); 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). The Sixth Circuit has found that an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

Here, the ALJ referred to the issue as whether plaintiff was disabled under the Social Security Act "by reason of any medically determinable physical or mental impairment or combination of impairments" (AR 13). In addition, the ALJ referred to his consideration of plaintiff's medically determinable impairments or combination of impairments in evaluating the disability claim (AR 14, 16). The ALJ also stated that he made his determination "[a]fter careful

8

consideration of the entire record" (AR 15). The ALJ's decision indicates that he considered the combined effects of plaintiff's impairments. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592. Accordingly, plaintiff's claim of error will be denied.

> **B.     It was error to disregard the functional capacity opinions of the treating physician, Dr. Blakeney. (Ex. 12F, T:296-297).**

Plaintiff contends that the ALJ committed error in disregarding the residual functional capacity (RFC) assessment by Dr. Blakeney. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and

(2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ addressed the doctor's RFC assessment as follows:

> The only opinion from the claimant's treating source is a fill in the blank form completed by Christine C. Blakeney (Ex. D11F). Notably, this document was not completed until January 21, 2009 and does not specify what period of time it covers. However, the medical records seem to indicate that the claimant did not begin treatment with Dr. Blakeney until February 2006 (Ex. D2F/21-23). Because the only relevant period of time for disability and limitations ranges from August 20, 2005 to December 31, 2005, this opinion is given little weight. Dr. Blakeney opined that the claimant could occasionally lift 10 pounds; frequently lift 10 pounds; stand or walk less than 2 hours in an 8-hour workday; and sit with no limitations in an 8-hour workday. Dr. Blakeney stated that the claimant must shift positions at will from sitting or standing to walking and that he needs to lie down twice a day. Dr. Blakeney based her opinions on the claimant's chronic pain due to his degenerative disc disease, degenerated right hip, and osteoarthritis. Dr. Blakeney stated that her finds are substantiated by x-rays, MRIs, physical examinations, and the claimant's symptoms. As discussed, Dr. Blakeney's opinions are given little weight because they are not supported by medical records and medical findings during the relevant period of time.

(AR 18).

The ALJ articulated good reasons for giving this RFC assessment little weight. Dr. Blakeney's assessment was completed on January 21, 2009 (AR 296-97), more than three years after plaintiff's lasted insured date of December 31, 2005. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of receiving DIB expired on December 31, 2005, he cannot

be found disabled unless he can establish that a disability existed on or before that date.  *Id.*  "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim).  In addition, evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status.  *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988).  Here, Dr. Blakeney's assessment is irrelevant, because it does not address plaintiff's condition as it existed on or before his last insured date of December 31, 2005.  This claim of error will be denied.

      **C.**    **That because Plaintiff had a more severe impairment of a herniated disc and radicular findings that were present at the time of his last insured status and documented by EMG and MRI findings shortly after the insured period, less than two months.  That the regulation that exists for finding of disability when a person has persistent back pain and herniated disc symptoms supported by objective medical testing post lumbar laminectomy was not followed.  In this case, the lumbar laminectomy was in September of 2004 and the medical findings as cited above were less than a year and a half later.**

Although not explicitly referenced in this statement of error, plaintiff contends that his condition meets or equals a listed impairment.  *See* Plaintiff's Brief (docket no. 13 at pp. ID## 354-56).  A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation.  *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987).  In order to be considered disabled under the Listing of Impairments,

"a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

In this claim of error, plaintiff contends that he met the requirements of Listing 1.05©. *See* Listing 1.05, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Because the current Listing 1.05 refers to amputations (an issue not present in this appeal), plaintiff is apparently referring to a former version of Listing 1.05© which described certain disorders of the spine (an issue which is present in this appeal).[2] *See Caruso v. Commissioner of Social Security*, 99 Fed. Appx. 376, 380 fn. 2 (3d

---

[2] A former version of Listing 1.05© provided as follows:

> Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2: 1. Pain, muscle spasm, and significant limitation of motion in the spine; and 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

Listing 1.05© (effective 2001). Defendants noted that plaintiff's reference to Listing 1.05 was in error. *See* Defendant's Brief (docket no. 14 at p. ID# 363).

Cir. 2004) (explaining that after the muskuloskeletal listings were amended, effective February 19, 2002, the Listing relevant to back impairments became Listing 1.04). To meet Listing 1.04, plaintiff must establish a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with one of three other requirements, set forth in Listing 1.04(A), (B) and ©.[3]

In his reply brief, plaintiff neither identified nor addressed a specific subparagraph of Listing 1.04, stating that:

> Plaintiff maintains he met listing 1.05 identified by Defendants as 1.04 which is two part. It requires evidence of either herniated nucleus pulposus, spinal, stenosis or degenerative disc disease resulting in a compromise of the nerve root or the spinal cord and in addition the claimant must show evidence of nerve root compression characterized by narrow anatomic distribution of pain, limitation of motion, sensory reflex or loss. Plaintiff did so.

Plaintiff's Reply (docket no. 15 at p. ID# 371). Plaintiff has not established that he met the requirements of Listing 1.04(A), (B) or ©. A court need not make the lawyer's case by scouring the

---

[3] The three subparagraphs of Listing 1.04 are as follows:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

party's various submissions to piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court deems this claim waived.

> **D.    Lastly, the objective medical evidence should have yielded a functional capacity of sedentary only work because of the significant objective medical evidence that was produced post August 20, 2005 and was ignored by the ALJ.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00©. Here, the ALJ reviewed the medical evidence and found that through the date last insured, plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he requires a sit/stand option (AR 16-18). Plaintiff cites no authority in support of his contention that the ALJ erred in evaluating his RFC. Rather, plaintiff argues that the ALJ should have found him capable of performing only sedentary work based upon medical evidence of his condition between August 20, 2005 and December 31, 2005, and Dr. Blakeney's assessment. As previously discussed, the ALJ did not err in evaluating the medical evidence of plaintiff's condition during the relevant time period and Dr. Blakeney's assessment was not relevant to plaintiff's DIB claim. There is no basis to change the ALJ's RFC determination. Accordingly, this claim of error will be denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's

decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Date: March 18, 2015                          /s/ Hugh W. Brenneman, Jr.
                                              Hugh W. Brenneman, Jr.
                                              United States Magistrate Judge